MATTER OF SINGH

In Section 246 Proceedings

A-11430285

*Decided by Board December 19, 1969*

The running of the five-year limitation provision of section 246 of the Immigration and Nationality Act is tolled by the service upon the alien of "notice of intention to rescind" adjustment of status issued by the District Director in accordance with the provisions of 8 CFR 246.1.

RESCISSION GROUNDS: Marriage not valid for nonquota status, and quota visa not available.

ON BEHALF OF RESPONDENT:
Joseph S. Hertogs, Esquire
580 Washington Street
San Francisco, Calif. 94111

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The above-captioned case concerns an interpretation of the five-year limitation provision of section 246(a) of the Immigration and Nationality Act (8 U.S.C. 1256(a))[1] insofar as it relates to the rescission of an adjustment of a nonimmigrant alien's immigration status to that of a permanent resident alien. The special inquiry officer, on December 6, 1968, concluded that it is

---

[1] The limitation provision of section 246(a) insofar as it relates to a rescission of an adjustment of status under section 245 of the Act reads as follows:

If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 . . . of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made.

impossible to enter an order of rescission "at any time within five years after the status of [the respondent] has been adjusted" under section 245 and terminated the proceeding. He relies upon *Quintana* v. *Holland*, 255 F.2d 161 (3 Cir., 1958). The trial attorney appeals on the ground that service of a "Notice of Intention to Rescind" within the five-year period is sufficient to toll the running of the statute.

The respondent is a native and citizen of India who was admitted to the United States at the port of New York on January 10, 1959 as a nonimmigrant student. He married a United States citizen at Reno, Nevada on July 24, 1963. An application for permanent residence status was granted on October 18, 1963. The notice of intention to rescind charges that the respondent's marriage to a United States citizen was entered into solely for the purpose of enabling him to acquire the status of a permanent resident of the United States because he never cohabited in a husband and wife relationship with his citizen wife.

The notice of intention to rescind was mailed to the respondent on September 12, 1968 by "certified mail—return receipt requested" (ex. 1). The return receipt shows that it was received by the respondent on September 19, 1968. Counsel by letter dated October 11, 1968 requested a hearing before a special inquiry officer. The hearing was held on December 6, 1968, during the course of which, counsel moved for termination of the proceeding on the ground that the proceeding is not in accord with "precedent decisions of the Board of Immigration Appeals and the Service" since "more than five years elapsed from the granting of permanent resident status on October 18, 1963, and the date of any entry of any decision in connection with the rescission proceeding" (p. 3).

Counsel in his brief on appeal relies upon *Quintana* v. *Holland*, 255 F.2d 161 (3 Cir., 1958), the Assistant Commissioner's decision in *Matter of T—*, 8 I. & N. Dec. 96 (1958), and an unreported decision by this Board in *Matter of Ettlinger*, A–12548706 (1966 and 1968). One of the issues presented in *Matter of T—* was whether appellate rights preserved for the alien under 8 CFR 246 prevented final disposition of the case within the five-year period of limitation provided by the statute. The Assistant Commissioner ruled that since the alien's application for adjustment of status was granted on June 11, 1953, the entry of an order by rescission by the District Director on June 3, 1958 tolled the five-year-period of limitation provided by the statute notwith-

standing that the appellate rights to which the alien was entitled have prevented final disposition of the case within the five years.[2]

A similar issue was before us in *Matter of Ettlinger (supra)*. Ettlinger's status was adjusted on October 6, 1961 and the special inquiry officer's order of rescission was entered on August 17, 1966, within the five-year period of limitation. We noted in our opinion of December 1, 1966 that the case of *Quintana v. Holland* is distinguishable. The case was again before us in deportation proceedings on February 7, 1968. We remanded in order to have the special inquiry officer reconsider the evidence in light of the burden of proof of clear, unequivocal and convincing evidence pursuant to the *Waziri* decision of the Ninth Circuit (392 F.2d 55, 1968) and the *Rodriques* decision of the Third Circuit (389 F.2d 129, 1968). We said in our opinion, "Reconsideration for the purpose of applying this burden of proof does not affect our prior holding that the rescission order of the special inquiry officer on August 17, 1966 was timely, and that thereafter the statute of limitations in section 246 was tolled."

We find little support for either counsel's position or that of the special inquiry officer in *Matter of T——*, or *Ettlinger*, because in those cases the issue was whether appellate rights when exercised granted the alien an immunity if the appellate proceeding was not completed within the five-year period of limitation. In this case we are concerned with whether the service of a notice to rescind or the date of the decision of the special inquiry officer tolls the running of the statute.

The Court of Appeals in *Quintana v. Holland (supra)* had before it a case involving the rescission of suspension of deportation on the ground that the alien's membership in the Communist Party made him ineligible therefor. Quintana's deportation was suspended by the Immigration Service on December 3, 1947, and reported to the Congress on December 15, 1947. He paid the fee on July 22, 1948, and on July 6, 1949 a congressional resolution approved suspension of deportation. The District Director notified Quintana on July 9, 1953 of his intention to rescind the grant of suspension of deportation. Following hearings in 1954 and 1955, the District Director on March 30, 1955 approved a recommendation for rescission of suspension of deportation. The Acting Regional Commissioner approved on April 11, 1955. Congress on

---

[2] *Quintana v. Holland (supra)* was decided on May 23, 1958 and the Assistant Commissioner made no reference to the decision of the Third Circuit Court of Appeals in his decision of July 31, 1958.

April 9, 1956 passed a concurrent resolution withdrawing suspension of deportation.

The Government took the position that the rescission proceedings were timely because Quintana was notified of the intention to rescind within five years of the date he paid his fee for suspension of deportation on July 22, 1948. The Government also argued that suspension of deportation is a "matter of legislative grace within a field of congressional supremacy the disposition of which Congress had reserved for itself," and the courts cannot either review or overrule an action taken by Congress.

The court stated in effect that the Government's argument was not based on a sound or valid premise. It stated, "We think ... that Congress meant to require the Attorney General to take the described action within five years and to be bound by that limitation itself ... The giving of notice within the five-year period is not enough ..." Referring to the phrase used in the statute "it shall appear to the satisfaction of the Attorney General," the court interpreted this as meaning that the Attorney General must make a "reasonable determination ... in good faith after such investigation and hearing as is required." The court stated that "the Attorney General could have made no such determination by the end of the five-year period from the latest possible date that can be considered" (255 F.2d 164).

We do not agree with the court's interpretation of the limitation provision of section 246. The ruling of a reviewing court in one circuit is not necessarily dispositive of the issue; a conflicting view may be expressed by a court in another circuit. See e.g. Errico v. INS, 349 F.2d 541 (9 Cir., 1965), and Scott v. INS, 350 F.2d 894 (2 Cir., 1965). Similarly the Government's failure to appeal from a court's adverse decision does not of itself indicate acquiescence. The determination not to appeal may be based on other considerations, such as the inadequacy of the record as a vehicle for appeal or factors outside of the record which render an appeal undesireable. Cf. Matter of Lim, Interim Decision No. 947 (BIA, 1969).

There was conflict between the circuits with regard to the limiation provisions found in section 19(a) of the 1917 Act.[3] The Third Circuit in the case of Hughes v. Tropello, 296 F. 306 1924), and McCandless v. U.S. ex rel. Swystun, 33 F.2d 882 1929), construed the phrase "at any time within [five or three] years after entry" as "words of limitation." The court said that

[3] Section 19(a) of the 1917 Act limited the deportability of certain designated aliens to "at any time within [five or three] years after entry."

in order to give effect to them "the warrant of deportation and not merely the warrant of arrest" must be issued within the statutory period and if not "the power of deportation is exhausted" (33 F.2d 883).

The majority of the Circuit Courts of Appeal did not adhere to the interpretation of the "words of limitation" enunciated by the Third Circuit. The most recent case is that of *Miller v. U.S. ex rel. Hunt*, 181 F.2d 363 (5 Cir., 1950). The question before the court was whether a timely-issued warrant of arrest, as distinguished from a warrant of deportation, served to toll the running of the limitation provision as set forth in section 19(a) of the 1917 Act. The court referred to the fact that there was a diversity of opinion prevailing between several of the circuits and the Third Circuit. The court ruled that a timely issuance of the warrant of arrest suffices and in support of its position said:

This position is warranted by the express phraseology of the statute and is rendered persuasive by consideration of the universal rule prevailing in the various states and federal courts,[4] that the filing of charges, whether by information or by indictment, tolls the running of the statute of limitations against a criminal prosecution and is effective even though the warrant be not served upon the accused until after the running of the statute.

We find no basis for applying a different rule with regard to the limitation provision of section 246. The function served by any statute of limitation is to give the accused notice of the assertion of a claim against him before it has become stale, in order that he may be duly warned to preserve his evidence if he wishes to contest the asserted claim, *D'Onofrio Construction Company v. Recon Company*, 255 F.2d 904, 908 (1 Cir., 1958). The Attorney General has said: "The effect of the five-year limitation on rescission is simply to bar the Attorney General from returning an alien with adjusted status [under section 245] to the category of a nonimmigrant." *Matter of S—*, 9 I. & N. Dec. 547, 554 (A.G., 1962).

Here the respondent seeks to bar the rescission of his adjusted status by claiming immunity under the five-year limitation provided by section 246. The Supreme Court has said that where one

---

[4] The court cited in support of its position the following immigration case: *U.S. ex rel. David v. Tod*, 289 F. 60 (2 Cir., 1923); *U.S. ex rel. Patton v. Tod*, 297 F. 385 (2 Cir., 1924); *U.S. ex rel. Danikas v. Day*, 20 F.2d 733 (2 Cir., 1927); *U.S. ex rel. Ginal v. Day*, 22 F.2d 1022 (2 Cir., 1927); *Metaxis v. Weedin*, 44 F.2d 539 (9 Cir., 1930); *Marty v. Nagle*, 44 F.2d 695 (9 Cir., 1930); *Tillinghast v. Cresswell ex rel. Di Pierro*, 54 F.2d 459 (1 Cir., 1931); *Raftery ex rel. Giacomazzi v. Tillinghast*, 63 F.2d 97 (1 Cir., 1933); *Bun Chew v. Connell*, 233 F. 220 (9 Cir., 1916).

resorts to a statute of limitations in order "to bar the rights of Government," such statute "must receive a strict construction in favor of the Government," *E. I. Dupont De Nemours and Company* v. *Davis*, 264 U.S. 456, 462, 68 L. Ed. 788, 791 (1924). If rescission proceedings must be concluded and not merely begun within the five-year period, the immigration authorities to whom the Attorney General has delegated his authority would of necessity in some cases be constrained to hasty and otherwise drastic procedure in order to avoid failure in their duty to obey the statute. Cf. *Nocchi* v. *Johnson*, 6 F.2d 1 (1 Cir., 1925). The Third Circuit's interpretation of the limitation provision of section 246 as stated in *Quintana* places a premium on the use of any and all means to delay a decision by the special inquiry officer. We cannot believe that the Congress intended that the power and authority to rescind would cease merely because the time accorded to the alien in which to have his day in court had run beyond five years, notwithstanding the fact that the notice to rescind had been served upon him within the five-year period of limitation. Cf. *U.S. ex rel. Patton* v. *Tod*, 297 F. 385, 397 (2 Cir., 1924). The statute must be given a fair and reasonable interpretation in order to effectuate its purpose, namely, to prevent undue delay in the bringing of actions, *Missouri, K. and T. R. Company* v. *Harriman Brothers*, 227 U.S. 657, 57 L. Ed. 690 (1913).

The notice of intention to rescind (Ex. 1), served upon the respondent by registered mail within the five-year period of limitation, fully sets forth the essential facts for commencement of rescission proceedings under section 246 of the Immigration and Nationality Act. Furthermore, it appears from a reading of the notice to rescind that there was probable cause for believing that the respondent had obtained his adjustment of status unlawfully. It has been held that where the foregoing factors are clearly set forth in a complaint served upon the accused, the service of the complaint tools the running of the statute of limitations, *Jaben* v. *United States*, 333 F.2d 535 (8 Cir., 1964), aff'd 381 U.S. 214, 14 L. Ed. 2d 345 (1965).

Contrary to the rationale applied by the Third Circuit in *Quintana*, we find nothing in the statute which says *when* the Attorney General must make "a reasonable determination ... in good faith ... after ... investigation and hearing ..." (255 F.2d 165).[5]

---

[5] It appears that the reasoning of the court with regard to whether the limitation provision of the statute had been met was influenced by the fact that at the time the notice to rescind suspension of deportatiton was served upon Quintana, the investigation with regard to his membership in the Communist Party had concluded negatively and the Service was then engaged in

In fact, a reading of the notice to rescind in the case before us makes it clear that the immigration officers to whom the Attorney General has delegated his authority had made "a reasonable determination ... in good faith . . . after investigation ..." because otherwise the notice to rescind would not have been served upon the respondent. All that remained was the hearing provided by 8 CFR 246.5 which affords the alien an opportunity to rebut the allegations set forth in the notice to rescind. The allegations by their very nature are notice to the respondent that the Attorney General is not satisfied that he "was ... in fact eligible for such adjustment of status."

We conclude on the basis of the foregoing that the five-year limitation provision of section 246 of the Act is tolled when the notice to rescind is issued by the District Director in accordance with 8 CFR 246.1. The decision and order of the special inquiry officer will be reversed and the case remanded for further proceedings in conformity with this opinion.

**ORDER:** It is ordered that the order entered by the special inquiry officer on December 6, 1968 terminating this proceeding be and the same is hereby withdrawn.

*It is further ordered* that the case be remanded to the special inquiry officer for further proceedings in conformity with the foregoing opinion.

---

seeking further evidence with which to convince the special inquiry officer that Quintana had been a member of the Communist Party (see 255 F.2d 165). This factor is not present in the case before us.