## In re FIRST NAT. BANK OF BILLINGS.

### No. 1552.

### District Court, D. Montana.
### April 2, 1930.

Johnston, Coleman & Jameson, of Billings, Mont., for receiver.

Geo. W. Pierson and G. C. Cisel, both of Billings, Mont., for bidders.

BOURQUIN, District Judge.

A document filed by Swords is in form a "petition for approval of sale of assets." It represents he is receiver for said bank in "process of liquidation over a period of years," which unobtrusive statement reflects the like in a letter of the Comptroller attached; that during said period 75 per cent. dividends have been paid; that all other assets in three lots were duly advertised, and at public sale bids therefor aggregating $82,100 were received; that ten days thereafter one of the successful bidders offered $85,000 for all said property. And he prays that on notice the court hear any objections, receive further bids, and approve and ratify the sale to the highest bidder. At hearing had, the bid of $85,000 was renewed. It appears the bank's debts aggregate $1,800,000, and the receivership has endured 20 years—a prima facie graphic illustration of the abuses of receiverships as life work and career. Had this liquidation been prompt, though it paid but 30 per cent., the creditors would have fared better financially than by 75 per cent. in driblets over 20 years; and in all else—hopes, expectations, plans, conditions, mental peace, and physical strength and endurance—they and the community would have gained much. Moreover, the Comptroller's record would be superior in fact to the pretty appearance of 75 per cent. "over a period of years." What, however, has this court to do with this venerable so-called receivership which comes tottering into the judicial forum?

By statute, the Comptroller is vested with power to liquidate certain national banks. Therein is provided that his agent labeled receiver, "upon the order of a court of record of competent jurisdiction, * * * may sell all the real and personal property of such association, on such terms as the court shall direct." Section 192, title 12, USCA. It is doubted that this implied duty by Congress imposed is judicial in nature or within the jurisdiction of even federal courts, to say naught of the states. See Liberty, etc., Co. v. Grannis, 273 U. S. 74, 47 S. Ct. 282, 71 L. Ed. 541. But pretermitting the point as have the parties, it is clear the court's power, if any, extends no farther than (1) to order sale made on terms, whether or not it can enforce its order, and (2) to grant or refuse confirmation of sale made and to it reported. If the receiver is limited to sale on the court's order, until order made his negotiations are of no force or effect. The court only orders, and the receiver sells.

As in any judicial sale, the order must precede the sale, and to the knowledge of prospective bidders thus to be encouraged and not chilled. Whether, on hearing to confirm, bids will be reopened, depends on circumstances. To reopen is generally unwise, and ought not to be done for a trifling advance of less than ½ of 1 per cent. to creditors.

At this time the only order is that the receiver sell at public sale all said property in lots as aforesaid, or in separate parcels if to better advantage, on ten days' notice by

publication local to Billings, to the highest bidder for cash not less than $82,100, and duly report for confirmation.