## STRECKFUS STEAMERS, INC., v. MAYOR AND BOARD OF ALDERMEN OF CITY OF VICKSBURG.

### No. 307.

District Court, S. D. Mississippi, S. D.

April 15, 1935.

Leo J. Sandmann, of Louisville, Ky., for plaintiff.

Landman Teller, of Vicksburg, Miss., for defendants.

HOLMES, District Judge.

This is a libel in personam filed in this court, in admiralty, seeking an injunction to restrain the libelee from attempting to collect from the libelant a privilege tax for carrying on the business of operating steamboat excursions from the wharves of the city of Vicksburg. The boats ply the Mississippi river from St. Louis to New Orleans, and periodical excursions are conducted from Vicksburg, and various other points on the river. They dock within the city where the passengers embark and disembark. The libelant relies upon the invalidity of the ordinance as beyond the power of the city, or even the state, to enact, since it deals with a subject impliedly delegated to the national government under the Federal Constitution.

The proceeding is in admiralty, although it seeks only equitable relief, but this is the forum deliberately chosen by the litigant. There is no question of the case being on the wrong docket by mistake. The clerk first entered it in equity, but it was transferred to the admiralty docket. This was done on motion of the proctor for the libelant, who says that he intended to file it in the admiralty court and insists that this is the court in which it properly belongs. The reason, good or bad, for his choice of this forum may be gleaned from his conception of the advantages to be gained in the extensive jurisdiction which, he claims, courts of admiralty exercise. In his brief in chief on the merits, it is stated: "At the outset we desire to impress upon the Court that this action is in Admiralty; that

the Court has taken jurisdiction under Admiralty, and that the jurisdiction is peculiar in that it is absolutely exclusive, albeit all-embracing. The three other jurisdictions of the District Courts, i. e., criminal, law, and equity, are all three embraced within the Admiralty, because a court of Admiralty sits as any one of the other three, yet neither of the other three may sit in Admiralty. Thus its exclusiveness and omnipotence. Such is this peculiar jurisdiction." He further contends that while admiralty proceeds upon equitable principles, and administers equitable remedies, it is not fettered by the equitable restriction that no suit in equity may be maintained where the plaintiff has a plain, adequate, and complete remedy at law. With this contention he seeks to avoid the direct ruling in Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, that, in Mississippi, the taxpayer ordinarily has a plain, adequate, and complete remedy at law by paying an illegal tax and suing to recover it.

There is no dispute about the facts, which have been embraced in four distinct agreements filed by counsel. The Streckfus Steamers, Inc., is a corporation created and existing under the laws of the state of Delaware. It is the owner of four large excursion steamers, propelled by paddle wheels, equipped with restaurants, cafeterias, soft drink and beer stands, and large dancing halls, with many seats and benches susceptible of use for general observation. They also have booths for the sale and raffling of trinkets. They are not equipped to carry freight, nor do they have sleeping quarters for passengers, but only for the crew. In other words, they are equipped to conduct short excursions for the pleasure of the passengers and the profit of the owners, a specified fee being charged to ride thereon. All of the boats have been and are duly licensed and enrolled by the United States Customs Service in the coasting trade upon the public navigable waters of the United States. The corporation's main office and the home port of its boats is in the city of St. Louis, Mo. The boats are not permanently located in the city of Vicksburg, but pass up and down the Mississippi river and its tributaries, from town to town, holding excursions. The libelant has for many years conducted excursions from the libelee's wharf. They are extensively advertised in the city of Vicksburg, and extensively patronized by its citizens and the inhabitants of the surrounding country. The excursionists have no other destination than to return to the wharf of the city, after having enjoyed a ride upon the river.

By the language of the ordinance a privilege or license tax of $200 is levied "upon each excursion boat taking passengers to and from the city, for each day or part of the day." Shortly after the passage of the ordinance the libelant paid the tax under protest and sought unsuccessfully in the state court to recover it in a common-law action. Mayor et al. v. Streckfus Steamers, 167 Miss. 856, 150 So. 215. It was there held that the ordinance was valid as to the business being carried on which was wholly intrastate. While that case was pending, under some agreement between the parties, other excursions were conducted and no effort was made by the officers of the city to enforce collection by civil or criminal process. Since its termination, the city, in a civil action in the state court, has sued to recover taxes subsequently accruing under the ordinance. This suit resulted in a judgment for the city, and the defendant appealed. The case is now pending in the highest court of the state.

While one basis of attack now made upon the ordinance does not seem to have been made in the state court in either of the cases mentioned, no satisfactory reason is given why it might not have been done, or may not yet be done in the case pending on appeal. If the ordinance is invalid as violative of the Federal Constitution and laws, which is the present contention, a court of law is as competent to adjudicate such issue as a court of equity or admiralty. The contention unsuccessfully urged in the state courts, that the excursions out of Vicksburg are operations in interstate commerce, is renewed here, but, in addition, it is forcefully contended that the boats are under the admiralty and maritime jurisdiction of the United States and that the ordinance is void, because it attempts to legislate upon the substantive law of navigation, a subject under the exclusive legislative control of the Congress, except as to purely local police regulations, which this tax is not. The latter contention was not urged in the state court in either of the common-law actions, and in presenting it here counsel confuses the two points. The power of Congress to legislate upon the substantive law of navigable waters is not dependent upon the constitutional grant to

regulate commerce among the several states and with foreign nations (Const. art. 1, § 8, cl. 3). The two powers, while analogous in many respects, are entirely distinct from, and have no necessary connection with, each other. They are conferred in the Constitution by separate and distinct grants, the former being implied and the latter express; and the former extends to domestic as well as interstate and foreign navigation; while, of course, the latter does not ordinarily extend to intrastate commerce. Town of Vidalia v. McNeely, 274 U. S. 676, 47 S. Ct. 758, 71 L. Ed. 1292; volume 1, ch. VI, Benedict on Admiralty (5th Ed.); United States v. Burlington & Henderson County Ferry Co. (D. C.) 21 F. 331; The City of Norwalk (D. C.) 55 F. 98, 105 (affirmed The Transfer No. 4 (C. C. A.) 61 F. 364, appeal dismissed McCullough v. New York, N. H. & H. R. Co., 163 U. S. 693, 16 S. Ct. 1203, 41 L. Ed. 312). In the case last cited the source of the legislative power over the maritime law is well stated, as follows:

"Aside from the grant of power to regulate foreign and interstate commerce, the constitution, it must be remembered, contains no direct grant to congress of legislative power over the maritime law. Its authority upon that subject, over and above the power derived from the commercial clause, though no doubt now firmly established (Butler v. Boston & S. Steamship Co., 130 U. S. 527, 9 S. Ct. 612 [32 L. Ed. 1017]; In re Garnett, 141 U. S. 1, 14, 11 S. Ct. 840 [35 L. Ed. 631]), rests upon implication only.

"The grounds of this implication, briefly stated, are that the constitution, in extending the judicial power to all cases of maritime jurisdiction, presupposes a certain body of maritime law as its necessary attendant; that this law is not only a matter of interstate and international concern, but requires, also, harmony and consistency in its administration, and hence cannot be subject to defeat or impairment by liability to the diverse legislation of numerous states; and that it cannot be supposed that the states, in parting with all control over the judicial administration of maritime causes, intended to reserve to themselves a general legislative power over the same subject; and that congress must, therefore, be the only body competent to make any needed changes in the general rules of the maritime law.

"This view, however, does not exclude state legislation upon matters of merely local concern, which can be much better cared for under state authority, and which have always been thus cared for; nor does it exclude general legislation by the states, applicable alike on land and water, in their exercise of the police power for the preservation of life and health, though incidentally affecting maritime affairs; provided that such legislation does not contravene any acts of congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations. The long-established doctrine in the supreme court has been that in this field of 'border legislation,' state laws are valid until congress interposes, and thereby excludes further state legislation. The Lottawanna, 21 Wall. 558, 581 [22 L. Ed. 654]; Cooley v. Port Wardens, 12 How. 299 [13 L. Ed. 996]; County of Mobile v. Kimball, 102 U. S. 691, 697–699 [26 L. Ed. 238]; Bowman v. Chicago & N. W. R. Co., 125 U. S. [465] 507, 8 S. Ct. 689, 1062 [31 L. Ed. 700]; Leisy v. Hardin, 135 U. S. 100, 120–122, 10 S. Ct. 681 [34 L. Ed. 128]; Manchester v. Commonwealth of Massachusetts, 139 U. S. 240, 266, 11 S. Ct. 559 [35 L. Ed. 159]; Ficklen v. Taxing Dist., 145 U. S. 1, 12 S. Ct. 810 [36 L. Ed. 601]. There is no reason why local state legislation should be deemed any more restricted by the implied power of congress over maritime legislation, than it is by the express grant of the commercial power. That the rule should be the same on each subject was intimated by Chief Justice Marshall in United States v. Bevans, 3 Wheat. [336] 385 [4 L. Ed. 404], and by Mr. Justice Curtis in Smith v. State of Maryland, 18 How. 71, 76 [15 L. Ed. 269]. The subject has been but little discussed, as compared with the frequent review of the commercial power of congress and its limitations."

Regardless of how strongly the argument might appeal to this court, it is without power to consider it because the litigant (as it had the right to do) has so chosen its forum and framed its pleadings as to preclude it. As noted, the only coercive relief asked is purely equitable, a permanent injunction to restrain the enforcement of the ordinance; and while this case has been under consideration by me the Supreme Court of the United States, on March

4, 1935, has held that courts of admiralty, except in limitation of liability proceedings, do not issue injunctions. Schoenamsgruber v. Hamburg American Line (The Oakland), 294 U. S. ——, 55 S. Ct. 475, 476, 79 L. Ed. ——. In its opinion in the above cases the court said: "While courts of admiralty have capacity to apply equitable principles in order the better to attain justice, they do not have general equitable jurisdiction and, except in limitation of liability proceedings, they do not issue injunctions."

I consider this recent and authoritative statement of the general principle contended for by the city to be applicable in this case, and for that reason am of the opinion that the injunction should be denied.

■ There is also a prayer "to declare the ordinance void and unenforceable," but that this was not intended to invoke a declaratory judgment or decree is quite clear from the fact that the libel was filed February 21, 1934, and the Federal Declaratory Judgments Act (Jud. Code § 274d, 28 USCA § 400) was not approved until June 14, 1934. In addition, in response to an interrogatory by the court, counsel disclaimed any reliance upon that act or any desire to amend and invoke it. The question remains whether the court should make a declaration sua sponte, and, after due consideration, I have concluded that it should not. Borchard, in his recent work on Declaratory Judgments (page 173), announces the general rule to be that "a court not having the authority to grant coercive relief, had the facts been ripe therefor, will not undertake to grant a declaration," citing several authorities; but there are other special reasons, appearing among the facts previously stated, which render any declaration inadvisable, if not prohibited. There have been two actions at law between these parties involving the validity of this ordinance. Each was in the state court, and in each the validity of the ordinance was sustained, and the Streckfus Steamers, Inc., adjudicated liable to pay the tax. Both cases were taken to the Supreme Court of Mississippi. One has become final (Mayor et al. v. Streckfus Steamers, 167 Miss. 856, 150 So. 215) and the tax has been paid; the other is now pending. In the case now pending on appeal, no reason appears why appellant may not urge the lack of power in the state to tax the business of operating excursion boats upon the navigable waters of the Mississippi river. A declaration of rights by this court could not be pleaded in the appellate court of the state, which exercises no original jurisdiction. Except as to the two cases mentioned, as to which any declaration by this court would be moot or advisory, the record discloses no "actual controversy" between the parties within the meaning of the Declaratory Judgments Act of June 14, 1934, as it does not appear that any other sums are claimed as due and owing for taxes under the ordinance. Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S. Ct. 282, 71 L. Ed. 541.

The libel will be dismissed, without prejudice to the right of the libelant to file a bill in equity or to pay any future tax accruing and sue at law to recover it.